# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TIMMY LEE HALLUM JR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:25-cv-00384** |
| **v.** | ) | **Judge Crenshaw / Frensley** |
| | ) | |
| **LELAND DUDEK,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment Based on the Administrative Record. Docket No. 9. Plaintiff has filed an accompanying Memorandum. Docket No. 9-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record (Docket No. 9) be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on August 9, 2021, alleging that he had been disabled since April 12, 2020, due to "blind[ness] or low vision- detached retina, astigmatism, lazy e[ye]; Blood clot disorder; Diabetes; Neuropathy- hard to grip in hands, arms; [Deep vein thrombosis]- can't walk more than 50 yards without severe ankle p[ain]; [High blood pressure]; Depression; Anxiety." Docket No. 8, Attachment ("TR"), TR 58. Plaintiff's applications were denied both initially (TR 56, 84) and upon reconsideration (TR 112, 122). Plaintiff subsequently requested (TR 152) and received (TR 39–55) a hearing. Plaintiff's hearing was conducted on January 23, 2024, by Administrative Law Judge ("ALJ") Robert Martin. TR 39. Plaintiff and vocational expert ("VE"), Katharine Jett, appeared and testified. *Id.*

On March 21, 2024, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 14–38. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.

2. The claimant has not engaged in substantial gainful activity since April 12, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertension, diabetes mellitus, deep vein thrombosis, loss of visual acuity, obesity, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or

2

scaffolds; can occasionally stoop, crouch, kneel, crawl and balance; can occasionally push or pull with bilateral lower extremities; should avoid concentrated exposure to work around hazardous machinery, moving parts and work at unprotected heights; should avoid occupations that require excellent depth perception or peripheral vision; cannot drive an automobile or operate heavy machinery for work purposes; can understand remember and perform routine repetitive tasks; can interact appropriately with supervisors and coworkers; cannot interact with the general public; can adapt to occasional changes in the workplace; can maintain concentration, persistence and pace for such tasks with normal breaks spread throughout the day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 14, 1982 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 12, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 20–21, 23, 30–32.

On April 14, 2024, Plaintiff timely filed a request for review of the hearing decision. TR 226–28. On February 26, 2025, the Appeals Council issued a letter declining to review the case (TR 1–6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

3

Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.   REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.   CONCLUSIONS OF LAW

### A.   Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.,* 305 U.S. at 229.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 U.S. Dist. LEXIS 10558, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 U.S. Dist. LEXIS 37054, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically deter-minable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only in-cludes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant num-bers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which sig-nificantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1]  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impair-ments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limi-tations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

> number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F .2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. ' 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that (1) the ALJ improperly discounted the medical opinions of two

7

doctors in assessing Plaintiff's RFC; (2) the ALJ improperly evaluated the severity of Plaintiff's disabling symptoms in assessing Plaintiff's allegations of pain and deciding to exclude cane use from RFC; and (3) the testimony of the vocational expert did not provide substantial evidence in support of the ALJ's decision because a portion of the ALJ's hypothetical was inaudible. Docket No. 9-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.* at 21.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Weight Accorded to Medical Opinions in Assessing RFC**

Plaintiff argues that the ALJ erred by discounting the medical opinions of two doctors, Suzette Kelly and Jon Constant, in assessing Plaintiff's RFC. Docket No. 9-1, pp. 14–18.

8

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his application after March 27, 2017. TR 58. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2)* . . . .

> **(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

>> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical

9

findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

**(2) Most important factors.** The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

**(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

10

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

> **(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>
> **(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>
> **(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>
> **(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).
>
> **(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim

11

or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

**(d) Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 C.F.R. § 404.1520c.

### A. The ALJ's Evaluation of Dr. Kelly's Opinion

Plaintiff maintains that the ALJ erred in discounting Dr. Kelly's opinion as unsupported, arguing that findings from a corresponding examination on August 19, 2021, as well as other portions of the record, provide support for Dr. Kelly's opinion and her rationale. Docket No. 9-1, pp. 14–15.

Defendant responds that the ALJ reasonably found that Dr. Kelly's opinion was unsupported because its corresponding examination did not contain any significant findings on physical examination. Docket No. 13, p. 8. Defendant also responds that the ALJ reasonably found Dr. Kelly's opinion was inconsistent with other evidence because a July 2022 consultative examination "documented a normal gait, the ability to ambulate without any assistive device, and normal muscle strength (Tr. 29, citing Tr. 853)"; the ALJ found that there "'was no evidence that [Plaintiff] sporadically loses his balance as he alleges' (Tr. 29, citing Tr. 863)"; and the ALJ found that "'there is little evidence to support the extreme limitations of him missing work for four days or more each month' (Tr. 29)." *Id.*

On August 19, 2021, Dr. Kelly provided a medical source statement regarding Plaintiff which involved circling options for listed limitations and abilities and writing brief notes. TR

12

562–63.  Dr. Kelly indicated that Plaintiff: can lift 5 pounds occasionally and frequently; cannot stand or walk in a workday and only 15 minutes at a time; can sit for no more than 60 minutes in a workday and sit at one time for no more than 30 minutes; can never bend or stoop, but occasionally balance and perform fine manipulation on the right, but never perform fine manipulation with the left hand; can constantly perform gross manipulation on the right and occasionally on the left; can raise left arm over shoulder level never and right arm frequently; can never work around dangerous equipment; can occasionally operate a motor vehicle; can occasionally tolerate heat and cold; can never tolerate dust, smoke, fumes, or noise exposure; has hearing loss and poor vision in the left eye; must occasionally elevate legs; does not medically require a hand-held assistive device for ambulation; has moderate pain; has pain that frequently interferes with his ability to pay attention and/or concentrate; would be expected to be off work for 4 or more days a month; has mild disturbances to ability to perform routine work-like functions as a side effect from prescribed medication; suffers from moderate fatigue.   TR 563

When discussing Dr. Kelly's opinion, the ALJ stated:

> Dr. Suzette Kelly of United Neighborhood Health issues an opinion on August 19, 2021 and concluded that the claimant has less than 5 pounds occasionally and frequently; unable to stand in a workday and only 15 minutes at a time; can sit for no more than 60 minutes and sit at one time for no more than 30 minutes; can never bend or stoop, but occasionally balance and perform fine manipulation on the right, but never perform fine manipulation with the left hand; can constantly perform gross manipulation on the right and occasionally on the left; has hearing loss and poor vision in the left eye; must occasionally elevate legs; has moderate pain; pain frequently interferes with his ability to pay attention and/or concentrate; would expect him to be off work for 4 or more days a month (Ex. 7F).

TR 28–29.

Ultimately, the ALJ discounted Dr. Kelly's opinion, stating:

> The undersigned finds this opinion unsupported by the examination findings and inconsistent with the remaining evidence … the undersigned finds this opinion generally unpersuasive.

TR 29.

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion. *20 CFR § 404,1520c(a)*. In discounting Dr. Kelly's opinion, the ALJ discussed the relevant factors, set forth above. *See 20 CFR § 404.1520c(c)(1) – (c)(5)*. Specifically, the ALJ found that Dr. Kelly's opinion was not supported by her treatment records or the objective medical evidence and that it was inconsistent with another examination. TR 29. The ALJ explained:

> [A]t the corresponding examination with United Health, the claimant alleged dizziness, and gait disturbance (Ex. 6F, p. 3). However, at another examination with another source in July of 2022, the claimant's gait was normal (Ex. 19F, p. 4). In fact, the record indicates the claimant was able to ambulate without the use of a cane or any assistive device during the examination (Ex. 19F, p. 4). He failed to use the cane properly (Ex. 19F, p. 4). He had normal muscle strength (Ex. 19F, p. 4), despite allegations of having uses [*sic*] a cane for more than 9 months which he reports had been prescribed (Ex. 21F, p. 3), but there is no prescription in the record. Furthermore, there is no evidence that the claimant sporadically loses his balance as he alleges (Ex. 21F, p. 3). The undersigned [*sic*] does allege fatigue in the record which could reasonably be attributed to diabetes and obesity, but even with fatigue there is little evidence to support the extreme limitations of him missing work for four days or more each month.

*Id.*

The ALJ did not describe how he considered the other factors beyond supportability and consistency, but as indicated above, he was not required to. *See 20 C.F.R. § 404.1520c(b)(2)*. Accordingly, the ALJ fulfilled his duty under the new regulations and properly evaluated the opinion of Dr. Kelly.

14

### B. The ALJ's Evaluation of Dr. Constant's Opinion

Plaintiff maintains that the ALJ erred in discounting Dr. Constant's opinion (TR 898–900) regarding Plaintiff's disability from psychological conditions. Docket No. 9-1, pp. 15–17. Plaintiff argues "the ALJ appears to discount the opinion because Dr. Constant relied on Mr. Hallum's self-report (Tr. 30)," but that "this is an improper basis for discounting this opinion," and that "it is unclear why the ALJ finds that Dr. Constant's opinion is based on Mr. Hallum's self-report, as Dr. Constant noted clinical findings in both opinion statements. …" *Id.* at 15–16. Plaintiff also argues the ALJ cherrypicked evidence to determine that Plaintiff's mental health was within normal limits by only considering the July 13, 2022 examination (Tr. 847) conducted by Dr. Constant's group, Mental Health Cooperative, because other documents in the record corroborate several symptoms diagnosed by Dr. Constant. *Id.* at 16–17 (citing TR 978, 979, 981, 1039, 1127).

Defendant responds that the ALJ reasonably found Dr. Constant's opinion was unsupported because the ALJ considered "the examination notes from Dr. Constant's group, which included mental status exams that were well within normal limits and had consistent demonstrations of linear logical, and goal directed thought process, good insight and judgment, and orientation to time, place, situation, and person (Tr. 30, citing Tr. 610, 845–47)." Docket No. 13, pp. 8–9. Defendant also argues that the ALJ reasonably found Dr. Constant's opinion was "'mostly inconsistent' because 'even with fatigue there is absolutely no evidence to support the extreme limitations of him missing work for four days or more each month.' (Tr. 30)." *Id.* at 9.

On July 13, 2023, Dr. Constant provided a medical statement letter regarding Plaintiff which involved checking or circling options for listed limitations and abilities and writing brief notes. TR 898–900. Dr. Constant indicated Plaintiff had the following psychological symptoms:

anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; generalized persistent anxiety; motor tension; apprehensive expectation; vigilance and scanning; persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object activity, or situation; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on average at least once a week; recurrent obsessions or compulsions which are a source of marked distress; and recurrent and intrusive recollections of a traumatic experience which are a source of marked distress.   TR 898.

Dr. Constant also indicated that Plaintiff's psychological condition caused the following limitations: a marked restriction of activities of daily living; a marked difficulty in maintaining social functioning; deficiencies of contraction, persistence or pace resulting in frequent failure to complete tasks in a timely manner; repeated episodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms; a complete inability to function independently outside the area of his home due to panic attacks; a moderately impaired ability to remember locations and work-like procedures; an insignificantly impaired ability to understand and remember short and simple instructions; a moderately impaired ability to understand and remember detailed instructions; an insignificantly impaired ability to cany out very short and simple instructions; a moderately impaired ability to carry out detailed instructions; a markedly impaired ability to maintain attention and concentration for extended periods; a markedly impaired ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; a moderately impaired ability to sustain an ordinary routine without special supervision; a markedly impaired

16

ability to work in coordination with and proximity with others without being distracted by them; a moderately impaired ability to make simple work-related decisions; a markedly impaired ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; a markedly impaired ability to interact appropriately with the general public; a moderately impaired ability to ask simple questions or request assistance; a markedly impaired ability to accept instructions and respond appropriately to criticism from supervisors; a markedly impaired ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; a moderately impaired ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; a moderately impaired ability to respond appropriately to changes in the work setting; a moderately impaired ability to be aware of normal hazards and take appropriate precautions; a moderately impaired ability to travel in unfamiliar places or use public transportation; a moderately impaired ability to set realistic goals or make plans independently of others; that he would be off task for 85% of a workday; that he would regularly miss work 4 or more days a month. TR 899–900.

When discussing Dr. Constant's letter, the ALJ stated:

> The opinion rendered from Jon Constant DO at Mental Health Co-operative. It was determined that the claimant would be off tasks 85% of the time; would miss up to 4 days a month from work (Ex. 23F and Ex. 27F).

TR 30.

Ultimately, the ALJ discounted Dr. Constant's opinion, stating "[t]he undersigned finds this opinion generally unpersuasive." *Id.*

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion. *20 CFR § 404.1520c(a)*. In discounting Dr. Constant's opinion, the ALJ

17

discussed the relevant factors, set forth above. *See 20 CFR § 404.1520c(c)(1) – (c)(5)*. Specifically, the ALJ found that Dr. Constant's opinion was not supported by or consistent with treatment records or the objective medical evidence. TR 30. The ALJ explained:

> The undersigned finds this opinion unsupported because at an examination at Mental Health Cooperative the claimant reported social anxiety in that the thought of going outside causes him to panic. He continued to report several mental symptoms to include an inability to regularly groom (Ex. 18F, p. 9). He reports a 20-pound weight loss which was not corroborated by the evidence (Ex. 18F, p. 9). The corresponding examination was well within normal limits (Ex. 18F, p. 11). At 10F and 18F, the claimant consistently presented with a thought process that was linear, logical, and goal directed along with no evidence of delusional thought, good insight and judgment, and orientation to time, place, situation, and person. Concerning the consistency of the opinion when compared to the remaining evidence, the undersigned finds this opinion mostly inconsistent because the undersigned [*sic*] does allege fatigue in the record which could reasonably be attributed to diabetes and obesity, but even with fatigue there is absolutely no evidence to support the extreme limitations of him missing work for four days or more each month.

TR 30.

As can be seen, the ALJ did not discount Dr. Constant's opinion solely because Dr. Constant relied on Plaintiff's self-report, but because the ALJ found it unsupported by and inconsistent with the corresponding examination and the remaining medical evidence. The ALJ did not describe how he considered the other factors beyond supportability and consistency, but as indicated above, he was not required to. *See 20 C.F.R. § 404.1520c(b)(2)*. Accordingly, the ALJ fulfilled his duty under the new regulations and properly evaluated the opinion of Dr. Constant.

For these reasons, the ALJ did not err in discounting the opinions of Dr. Kelly and Dr. Constant.

18

## 2. Subjective Complaints of Pain and Exclusion of a Cane Limitation from the RFC

Plaintiff contends that the ALJ erred in finding that the alleged severity of his subjective complaints was not fully credible. Docket No. 9-1, pp. 18–20. Specifically, Plaintiff argues that the ALJ improperly excluded Plaintiff's alleged need for a cane from the RFC (Tr. 24) because other documents in the record support Plaintiff's need for a cane, and that the ALJ erroneously relied solely on objective medical evidence. *Id.* at 15, 19–20 (citing TR 646, 1004–05, 1037; *Stillion v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 151745, 2014 WL 5432130, No. 2:14-cv-0017, at *14 (S.D. Ohio Oct. 27, 2014) ("An ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking")).

Defendant responds that the ALJ reasonably supported his decision to exclude a cane limitation from the RFC because the alleged need for a cane was inconsistent with the record. Docket No. 13, p. 9. Defendant emphasizes the ALJ's reliance on a July 2022 physical consultative examination which showed that Plaintiff's gait was normal, that he could ambulate without the use of any assistive device, and that he had normal muscle strength. *Id.* (citing TR 24).

"According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court must first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's

19

symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), *construing* 20 C.F.R. § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that although there was evidence of an underlying medical condition, the severity of the alleged pain was unsupported because Plaintiff's "statements about the intensity, persistence, and limiting effects of his or her symptoms … are inconsistent." TR 24. In finding that Plaintiff satisfied the first step, the ALJ considered the following evidence provided by Plaintiff:

> The claimant submitted two written forms outlining her [*sic*] ability

to lift, squat, bend, stand, reach, walk, kneel, climb stairs, vision, complete tasks, concentrate and using hands. The claimant alleged pain, depression, and social anxiety. The claimant reads during the day either in a seated or laying down position. He has difficulty sleeping secondary to waking often, pain and anxiety. He requires reminders to take medication. He prepares simple meal items. He performs laundry duties which takes him about 4 hours to complete. He lacks stamina to complete this duty and also suffers with dizziness. He is too afraid to go out alone. He continues to tend to financial responsibilities. He watches television and reads as hobbies. He requires a monitor when he leaves the house. She [*sic*] follows written and spoken instructions well. He gets along with authority figures (Ex. 4E and Ex. 21E).

The claimant also provided oral testimony where he alleged pain, depression, fatigue, and issues with tending to personal care. He also endorsed memory issues. He alleges feeling worthlessness. He often isolates himself. He spends most of the day in the fetal position. Due to vision issues, he has difficulty playing video games and reading.

TR 24. On the second step, however, the ALJ articulated inconsistencies with medical evidence that led him to doubt that the severity of Plaintiff's pain causes a need to use a cane:

[T]he claimant alleges that he uses a cane, but at a consultative examination there was no evidence to support the use of a cane (Ex. 19F). The claimant alleged dizziness, and gait disturbance (Ex. 6F, p. 3). In July of 2022, the claimant's gait was normal (Ex. 19F, p. 4). In fact, the record indicates the claimant was able to ambulate without the use of a cane or any assistive device during the examination (Ex. 19F, p. 4). He failed to use the cane properly (Ex. 19F, p. 4). He had normal muscle strength (Ex. 19F, p. 4), despite allegations of having uses [*sic*] a cane for more than 9 months which he reports had been prescribed (Ex. 21F, p. 3), but there is no prescription in the record. Furthermore, there is no evidence that the claimant sporadically loses his balance as he alleges (Ex. 21F, p. 3).

*Id.*

As can be seen, the ALJ's decision to exclude cane use from the RFC specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. *Id.* It is clear from the ALJ's

21

detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk,* 667 F.2d at 538. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F. 3d at 531, *citing Bradley,* 682 F. 2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F. 3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that cane use should not be included in the RFC. TR 23–24. The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

22

### 3. Reliance on the VE's Testimony in Response to Hypothetical Questions which Contain an Inaudible Portion

Plaintiff argues that remand is warranted because a portion of the ALJ's hypothetical questions posed to the VE is inaudible (Tr. 51), and that it is therefore unclear whether the ALJ posed a hypothetical question that matches the RFC finding in establishing the existence of a significant number of jobs in the national economy that Plaintiff could perform. Docket No. 9-1, pp. 20–21.

Defendant responds that remand is not warranted because the inaudible portion of the transcript does not preclude a thorough review of the record and substantial evidence supports the ALJ's decision despite the inaudible portion of the transcript. Docket No. 13, pp. 14–15. Defendant argues that the missing words can be determined by comparing the hypothetical question in the hearing transcript to the RFC finding; that these missing words were insignificant; and that the missing words did not cause the VE or anyone else at the hearing to misunderstand the hypothetical question. *Id.* at 15.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 CFR §§ 404.1520, 416.920. *See also Moon*, 923 F. 2d at 1181. The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F. 2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the

23

availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F. 2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). At Plaintiff's hearing, the ALJ in the instant action posed several hypothetical questions to the VE. TR 50–52. The ALJ first queried:

> Q: … I want you to assume a hypothetical person with the same age, education, and relevant past work experience as the Claimant, who would have the following functional capacity to perform a range of light work. The person could occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally stoop, crouch, kneel, crawl, and balance. The person can occasionally push or pull with the bilateral lower extremities. The person should avoid concentrated exposure to hazardous machinery, moving parts, and working at unprotected heights. This person cannot drive an automobile or operate heavy machinery for work purposes. This person should avoid occupations that require excellent depth perception or peripheral vision. Mentally, the person can understand, remember, and perform simple, routine, repetitive tasks, can interact appropriately with supervisors and coworkers. This person cannot interact with the general public. This person can adapt to occasional changes in the workplace, and can maintain concentration, persistence, and pace. [INAUDIBLE] tasks and normal breaks spread throughout the day. I'm assuming all past work is eliminated?
>
> A: That is correct, Your Honor.
>
> Q: Could you give me three unskilled jobs this hypothetical person could do?
>
> A: Yes, Your Honor. Examples of positions that would be available, marker, DOT code 209.587-034. That is a light, SVP 2 position, and there are approximately 300,000 positions in the national economy. A second example would be router, DOT code 222.587-038. That is a light, SVP 2 position with approximately 53,000 positions in the

24

national economy. And for a third example, photocopy machine operator, DOT code 207.685-014. Your Honor, there are typically approximately 25,000 positions in the national economy. Due to the no interaction with the public, I would reduce that number by one-third, and that would leave a remaining approximately 16,500 positions in the national economy.

TR 50–51.

The ALJ then modified the hypothetical question and queried:

Q: So in the next hypothetical, if the person were to be off task at least 15% of the workday, would that eliminate competitive employment?

A: Yes, Your Honor.

TR 51–52.

The ALJ again modified the hypothetical question and queried:

Q: And then lastly, if the person were to miss at least two days a month due to their medical condition, would that also eliminate competitive employment?

A: Yes, Your Honor.

TR 52.

The ALJ again modified the hypothetical question and queried:

Q: And one last hypothetical. If a person could not interact appropriately with supervisors, workers, and the general public, would that also eliminate competitive employment?

A: Yes, Your Honor.

*Id.*

As can be seen, the ALJ posed several hypothetical questions to the VE, each incorporating different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 50–52. As has been discussed in the statements of error above, the

25

ALJ properly evaluated the evidence, found that Plaintiff's allegations were not fully credible, and ultimately determined that Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; can occasionally stoop, crouch, kneel, crawl and balance; can occasionally push or pull with bilateral lower extremities; should avoid concentrated exposure to work around hazardous machinery, moving parts and work at unprotected heights; should avoid occupations that require excellent depth perception or peripheral vision; cannot drive an automobile or operate heavy machinery for work purposes; can understand remember and perform routine repetitive tasks; can interact appropriately with supervisors and coworkers; cannot interact with the general public; can adapt to occasional changes in the workplace; can maintain concentration, persistence and pace for such tasks with normal breaks spread throughout the day.

TR 23.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F. 2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

In certain cases, "procedural errors like defects in a hearing transcript may constitute good cause for remand in a Social Security appeal." *Doski v. Soc. Sec. Admin.*, No. 3:21-cv-00209, 2022 U.S. Dist. LEXIS 50822, 2022 WL 860441, at *1 (M.D. Tenn. Mar. 22, 2022). However, this Court and others have found that inaudible portions of an exchange between an ALJ and a VE will not warrant remand where the meaning of the missing portion can be discerned or if a thorough review is not otherwise prevented by the inaudible portion. *See, e.g., id.* ("Remand is not required

26

where transcription errors do not preclude the court from conducting a thorough review of the record") (citation modified); *Bratton v. Astrue*, No. 2:06-0075, 2010 U.S. Dist. LEXIS 72752, 2010 WL 2901856, at *5 (M.D. Tenn. July 19, 2010) ("enough of the conversation between the ALJ and the VE exists to show that the VE properly considered Plaintiff's limitations and to support the ALJ's reliance on the bench assembler job"); *Williams v. Barnhart*, 289 F.3d 556, 557–58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record"); *Kimrey v. Berryhill*, No. 3:17-CV-289-HBG, 2018 U.S. Dist. LEXIS 88157, 2018 WL 2392829, at *5 (E.D. Tenn. May 25, 2018) ("inaudible portions of a hearing transcript will not be grounds for remand absent the missing portions preventing judicial review"); *Moore v. Colvin*, No. 13-128-HRW, 2014 U.S. Dist. LEXIS 133850, 2014 WL 4748475, at *3 (E.D. Ky. Sept. 23, 2014) ("the inaudible segments did not prevent the ALJ from discerning the meaning of the missing portions, and likewise do not prevent this Court from conducting a thorough review").

In the instant action, the hypothetical question posed to the VE by the ALJ, upon which the ALJ relied to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, accurately reflected the limitations that the ALJ found credible, consistent with, and supported by, the evidence of record. *See* TR 23–30.

Moreover, the inaudible portion of the transcript does not prevent a thorough review of the ALJ's reliance on the VE's testimony because the inaudible portion can be discerned by a comparison to the ALJ's RFC finding; the meaning as discerned shows the inaudible portion is insignificant; and the inaudible portion did not cause a misunderstanding for any participant in the hearing. The inaudible portion of the transcript is found in the ALJ's first hypothetical posed to

27

the VE (TR 50–51), which is otherwise a verbatim reading of the ALJ's RFC finding (TR 23). The inaudible portion is between the words "pace" and "tasks" (TR 51), and the portion between these words in the ALJ's RFC finding are "for such" (TR 23). Because the hypothetical was a verbatim reading of the RFC finding, this portion of the hypothetical RFC described to the VE can be discerned as having been "can maintain concentration, persistence and pace [for such] tasks with normal breaks spread throughout the day." The VE was not confused by the ALJ's hypothetical, and there is no reason that the omission of "for such" could have caused a misunderstanding that the VE was unaware of.

Because the hypothetical question upon which the ALJ ultimately rendered his decision accurately represented Plaintiff's credible limitations and the insignificance of the inaudible portion of the hypothetical question could not have caused a misunderstanding, the ALJ properly relied on the VE's answer to that hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F. 2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F. 2d at 779. Accordingly, Plaintiff's claim fails.

## IV.   RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record (Docket No. 9) be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said

objections.   Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

29